# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| JENNIFER MUNTER a/k/a JENNY MUNTER,<br><br>Plaintiff,<br><br>vs.<br><br>MEAGAN SCHMIDT,<br><br>Defendant. | CV 17-21-BU-BMM<br><br><br><br>**ORDER** |

Defendant Meagan Schmidt filed a Motion in Limine Regarding Economic Damage Theories on April 13, 2018. (Doc. 24.) Plaintiff Jennifer Munter filed her response on April 27, 2018. (Doc. 30.) The Court held a motion hearing on June 7, 2018. (Doc. 43.) The Court conducted a Final Pretrial Conference on October 3, 2018. (Doc. TBD.) Trial is presently scheduled for October 15, 2018.

## BACKGROUND

Munter and Schmidt were involved in a car accident. (Doc. 25 at 2.) The parties dispute causation and damages. (Doc. 25 at 2.) Munter's Rule 26(a) initial computation disclosure stated that she is seeking $50,000 plus in damages for lost income and is seeking lost earning capacity damages in an amount "[t]o be determined." (Doc. 25 at 2.)

1

Munter provided employment information from 2007 through September 2016. (Doc. 30 at 4.) Munter previously owned and operated Children's Playhouse, a daycare in O'Neil, Nebraska, from 2007 to 2013. (Doc. 30 at 2.) Munter moved to Montana in the Summer of 2013. (Doc. 30 at 3.) Munter worked as a head start teacher from September 2013 through December 2013. (Doc. 30 at 4.) Munter earned approximately $12 to $13 an hour. (Doc. 30 at 4.) Munter then worked at Montana Kids from January 2014 to May 2014 for less pay than she received as a head start teacher. (Doc. 30 at 4.) Munter worked at Dust Bunnies from July 2014 to August 2014. (Doc. 30 at 4.) Munter earned $15 to $16 an hour at Dust Bunnies. (Doc. 30 at 4.) Munter then reopened Children's Playhouse in Belgrade, Montana in September 2014. (Doc. 30 at 2.) Munter closed Children's Playhouse in September 2016. (Doc. 30 at 2.) Munter's treating providers stated that Munter's "pain will likely begin to resolve once she discontinues her childcare." (Doc. 30 at 2.) Munter is currently enrolled at Montana State University. (Doc. 30 at 2.) Munter anticipates graduating with a degree in Community Health in 2020. (Doc. 30 at 2.) Munter is currently working approximately eighteen hours per week at an $8.50 an hour pay rate. (Doc. 30 at 2.)

Munter produced her income tax returns from 2008 through 2017. (Doc. 30 at 4.) Munter had a total income of $19,131 in 2014. (Doc. 30 at 4.) Munter had a

total income of $13,257 in 2015. (Doc. 30 at 4.) Munter's total income in 2016 was $10,665. Munter's total income in 2017 was $4,012.00.

Schmidt contends that Munter's damage computations are inadequate. Specifically, Schmidt claims that Munter's disclosure that lost earning capacity damages are "to be determined" is "improper because Munter did not provide a computation, and she did not state on what documents or other evidentiary material the claim is based." (Doc. 25 at 5.) Schmidt argues the improper disclosure violates Rule 26(a)(1)(A)(iii) thereby warranting automatic exclusion under Rule 37(c)(1). (Doc. 25 at 5.) Schmidt further contends that Munter's lump sum disclosure for $50,000 plus in lost income damages likewise proves improper because a lump sum is not an adequate computation. (Doc. 25 at 9.) Schmidt argues that Munter's lost income disclosure "entirely fails to provide any insight as to her method of calculating her lost income claim; nor does it state upon which economic documents she relies." (Doc. 25 at 9-10.) Accordingly, Munter's claim for lost income also violates Rule 26(a)(1)(A)(iii) and should be excluded under Rule 37(c)(1).

Munter contends that her lost income disclosure of $50,000 plus "is a good estimate of what the jury is expected to award for lost income in this case." (Doc. 30 at 6.) Munter further claims that she has disclosed enough evidence to support her loss income computation. (Doc. 30 at 9.) Munter states she has "disclosed

3

information in the form of tax returns, various jobs, various incomes, testimony that Munter had to close her business due to the injury and her expected return to work post graduating in 2020." (Doc. 30 at 9.) Finally, Munter argues that even if her disclosures were inadequate, the disclosures were substantially justified or harmless pursuant to Rule 37(c)(1).

Munter filed her Trial Brief on October 2, 2018. (Doc. 74.) Munter's Third Amended Rule 26(a)(1) Initial Disclosure, filed as Exhibit 2 of Munter's Trial Brief, stated an updated computation of lost income damages. (Doc. 74-2 at 16.) Munter's Third Amended Rule 26(a)(1) Initial Disclosure was disclosed to Schmidt on June 26, 2018. (Doc. 74-2 at 7.) Munter is currently seeking $40,000 to $60,000 in lost income. (Doc. 74-2 at 16.) Munter's amended Rule 26(a)(1) initial disclosure does not reference loss of earning capacity. *See* (Doc. 74-2 at 16.)

The Court briefly reheard argument on Schmidt's Motion in Limine Regarding Economic Damage Theories. Munter, through her counsel, agreed that Munter would confine her economic damages testimony to lost income.

As stated by the Court during the Final Pretrial Conference on October 3, 2018, Munter will be limited to a claim of $45,000 in lost income. This figure falls within the broad range of "$50,000 plus" as set forth in Munter's initial disclosure (Doc. 25 at 2) and the "$40,000 to $60,000" provided by Munter in her supplemental disclosure (Doc. 74-2 at 16). This figure strikes a reasonable balance

to allow Munter to recover the full extent of her economic injury and to allow Schmidt a reliable computation of Munter's damages, as required by Rule 26(a), to allow Schmidt to defend properly against Munter's claim.

Accordingly, IT IS ORDERED that Schmidt's Motion in Limine Regarding Economic Damages is DENIED IN PART and GRANTED IN PART.

IT IS FURTHER ORDERED that Munter's testimony is limited to a claim of $45,000 in lost income.

DATED this 4th day of October, 2018.

Brian Morris
United States District Court Judge